UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In Re:                                               Chapter 11

A & T Assets LLC,                                    Case No. 1-23-41827-NHL

        Debtor.

-----------------------------------------------------------X

**DEBTOR'S DISCLOSURE STATEMENT FOR THE**
**CHAPTER 11 PLAN PROPOSED BY THE DEBTOR-IN-POSSESSION**

      **PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLSOURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION. THE DEBTOR BELIEVES THAT THIS PLAN IS IN THE BEST INTERESTS OF THE CREDITORS, CLAIMANTS AND SHAREHOLDERS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE DEBTOR URGES THAT VOTERS ACCEPT THE PLAN.**

      **THIS IS NOT A SOLICIATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLSOURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DISLCOSURE STATEMENT IS BEING SUBMITED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

Weinberg, Gross & Pergament LLP
Attorneys for A & T Assets LLC
400 Garden City Plaza, Suite 309
Garden City, New York 11530
Attn: Marc A. Pergament, Esq.
(516) 877-2424 ext. 226
mpergament@wgplaw.com

## INTRODUCTION

A & T Assets LLC, the debtor (the "Debtor" and "Debtor-in-Possession") submits this Disclosure Statement (the "Disclosure Statement") pursuant to Section 1125 of title 11 of the United States Code (the "Bankruptcy Code") to all its creditors (the "Creditors"), claimants (the "Claimants") and holders of interests ("Interests") in connection with its Plan of Reorganization (the "Plan") filed with the Court.  Your rights may be affected.  You should read the Disclosure Statement and the Plan carefully and may wish to discuss them with an attorney.  If you do not have an attorney, you may wish to retain one.

The Plan and Disclosure Statement contain many defined terms, identified using initial (first letter) capitalization.  For the purposes of this Disclosure Statement, and to the extent not otherwise provided for herein, all capitalized terms in the Disclosure Statement which are not specifically defined herein, shall have the same meanings assigned to them as set forth in Article I of the Plan, entitled "Definitions." Each definition as set forth in Article I is specifically incorporated by reference into this Disclosure Statement (including those terms which are used in the Plan which may be undefined in Article I of the Plan, shall nevertheless have the meaning given for such term in the Bankruptcy Code) and all persons and entities holding or asserting Claims against, or Interests in, the Debtor, are encouraged to refer to Article I of the Plan in the event there are capitalized terms in this Disclosure Statement with which they are unfamiliar.

Whenever from the content it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter.  The words "herein" "hereof" and "hereunder" and other words of similar import, refer this Disclosure Statement as a whole and not to any portion hereof.  The word "including" shall mean "including, without limitation."

### Purpose of this Disclosure Statement

The purpose of this Disclosure Statement is to enable Creditors, Claimants, and Interest Holders to make a reasonably informed decision in exercising their right to vote on the Plan. However, only those Holders of Allowed Claims and Holder of Interests in a Class that is Impaired under the Plan are entitled to vote.  Voting rights of individual Classes are discussed more fully below.

This Disclosure Statement is intended to provide such information as may be deemed to be material, important and necessary for a reasonable investor or creditor typical of the Holders of Impaired Claims to make an informed decision whether to vote in favor or against the Plan.  This Disclosure Statement, therefore, describes the business background and operating history of the Debtor.  It also explains certain events deemed to be significant that preceded the filing for chapter 11 bankruptcy relief.  It describes the Debtor's assets and summarizes the terms of the Plan and provides relevant financial information.

THIS DISCLOSURE STATEMENT, HOWEVER, IS NOT THE PLAN.  IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN,

THE PLAN SHALL CONTROL.  YOU ARE URGED TO REVIEW THE PLAN CAREFULLY BEFORE VOTING.  YOU ARE FURTHER URGED TO CONSULT WITH AN ATTORNEY IN ORDER TO UNDERSTAND THE PLAN FULLY.

By Order dated _____, 2023, the Bankruptcy Court approved this Disclosure Statement, finding that it contained adequate information as required pursuant to Section 1125 of the Bankruptcy Code.  The Bankruptcy Court has not yet ruled on the merits of the Plan.  THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE EITHER A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.

THE DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN AND CERTAIN OTHER DOCUMENTS AND FINANCIAL INFORMATION.  WHILE IT IS BELIEVED THAT THE SUMMARIES ARE FAIR AND ACCURATE AND PROVIDE ADEQUATE INFORMATION WITH RESPECT TO THE DOCUMENTS SUMMARIZED, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS, WHICH ARE CONTROLLING IN THE EVENT OF ANY INCONSISTENCY.  EACH HOLDER OF A CLAIM AGAINST OR OWNERSHIP INTEREST IN THE DEBTOR IS URGED TO REVIEW THE PLAN AND THE EXHIBITS TO THIS DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE CASTING A VOTE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER APPLICABLE NON-BANKRUPTCY LAWS.   PERSONS OR ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN BASED UPON INFORMATION SUPPLIED BY THE DEBTOR.  AS INDICATED HEREIN, THE FINANCIAL INFORMATION WITH RESPECT TO ASSETS AND LIABILITIES ARE ESTIMATES BASED UPON THE AVAILABLE INFORMATION.  THE DEBTOR, HOWEVER, CANNOT REPRESENT THAT FUTURE EVENTS MAY NOT REQUIRE CHANGES TO THE INFORMATION CONTAINED HEREIN.

NO REPRESENTATIONS CONCERNING THE PLAN, THE DEBTOR, ITS BUSINESS OPERATIONS, THE VALUE OF ITS PROPERTY OR THE VALUE OF BENEFITS OFFERED TO CLAIMANTS, CREDITORS OR OWNERSHIP INTERESTS OR OTHER PARTIES IN INTEREST IN CONNECTION WITH THIS PLAN ARE AUTHORIZED, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  YOU SHOULD NOT RELY ON ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH ARE CONTRARY TO THE INFORMATION

CONTAINED IN THE DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT.

NEITHER THE PLAN NOR THIS DISCLOSURE STATEMENT HAVE BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE FAIRNESS OR THE MERITS OF THE INFORMATION CONTAINED HEREIN. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

YOU ARE NOT TO CONSIDER THE CONTENTS OF THIS DISCLOSURE STATEMENT AS LEGAL, TAX OR ACCOUNTING ADVICE BUT SHOULD CONSULT YOUR COUNSEL, ACCOUNTANT AND BUSINESS ADVISORS AS TO LEGAL, TAX AND ACCOUNTING MATTERS CONCERNING THE PLAN.

### <u>Recommendation of the Debtor</u>

The Debtor recommends that Claimants, Creditors and Interest Holders vote to accept the Plan. The Debtor is the proponent of the Plan and believes that the Plan is the best means to maximize the value of the Debtor's assets and to provide the greatest and quickest return to Creditors on account of their Allowed Claims against the Debtor as well as to Interest Holders on account of their ownership interests in the Debtor. The Plan, as opposed to dismissal or conversion of the case to a chapter 7 liquidation, will permit a greater distribution. The treatment of Creditors, Claimants and Interest Holders under the Plan contemplates a greater recovery than that which would be achieved under other alternatives than the reorganization of the Debtor under the Plan.

**A.      Procedures and Deadlines for Completing Ballots and Voting on this Plan**

A Ballot for accepting or rejecting the Plan is enclosed for use by those Holders of Allowed Claims entitled to vote on the Plan. By Oder of this Court dated _____, 2023, holders of Claims entitled to vote should carefully read the instructions contained on the Ballot and complete, date, sign and mail the Ballot to the address indicated thereon so that it is actually received no later than _____, 2023, such that the Ballot shall be counted. For your ballot to be counted it must be received by no later than _____, 2023 at 5:00 p.m. prevailing eastern time.

**B.      Voting Requirements**

For the Plan to be confirmed, it must be accepted by each Class of Creditors, Claimants and Interest Holders whose Claims or Interests are "impaired" under the terms of the Plan, as that term is defined in Section 1124 of the Bankruptcy Code (and explained in Part IV of this Disclosure Statement). Only "impaired" Creditors, Claimants and Interest Holders as said terms are defined under the Plan, are entitled to vote to accept or reject the Plan.

ONLY ENTITIES WHO AFFIRMATIVELY ACT BY SENDING IN THEIR PROPERLY COMPLETED BALLOT SO THAT THE BALLOT IS RECEIVED BY THE DEADLINE SET FORTH HEREIN (UNLESS OTHERWISE EXTENDED BY THE DEBTOR OR AN ORDER OF THE COURT) SHALL HAVE THEIR VOTES COUNTED IN THE VOTE DETERMINATION.

<u>Under the Bankruptcy Code, a class of Creditors, Claimants and Interest Holders whose Claims or Interests are "impaired" within the meaning of that term in the Bankruptcy Code, and whose vote is therefore being solicited hereunder, will be deemed to have accepted the Plan if acceptances of the Plan are received from Creditors or Claimants holding at least two-thirds in amount and more than one-half in number of the Allowed Claims held by the Creditors or the Claimants in that Class which affirmatively act by casting a Ballot to accept or reject the Plan, on or before the above-stated deadline date.  A class of holders of Ownership Interests will be deemed to have accepted the Plan if acceptances of the Plan are received from holders of Ownership Interests holding at least two-thirds in amount of Ownership Interests which affirmatively act by casting a Ballot to accept or reject the Plan, on or before the above-stated deadline date.</u>

1.    <u>Voting Classes</u>

In this case, all Claimants and Creditors whose Claims are included in Class 1 and 3 designated under the Plan (and described below) are impaired, and their vote (by casting a Ballot as to the Plan on or before the above-stated deadline for casting Ballots) shall be counted in the Vote Determination.

Presumed Acceptance of the Plan

Class 2 is unimpaired under the Plan, as the Plan leaves unaltered the legal and equitable rights to which holders of Claims and Interest are entitled, and, therefore, these Classes are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

Class 4 is presumed to have accepted the Plan and is not entitled to vote.

2.    <u>One Vote per Holder in any One Class</u>

If a holder of Claim holds more than one Claim in any one Class, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting for or against the Plan.

**C.    Procedures for Vote Tabulation**

In determining whether the Plan has been accepted or rejected, and Ballot timely received that contains sufficient information to permit the identification of the claimant, is signed by the claimant or an authorized agent and is cast as an acceptance or rejection of the Plan shall be counted.

The following Ballots may not be counted in determining whether the Plan has been accepted or rejected: (a) any Ballot received after the voting deadline as set by the Bankruptcy Court; (b) any Ballot that is not signed or fails to contain sufficient information for the identification of the claimant; (c) any Ballot timely received that fails to indicate an acceptance or rejection of the Plan; (d) any Ballot timely received that indicates both an acceptance and rejection

of the Plan; (e) any Ballot submitted by an entity other than the holder of a claim that is deemed allowed under the Plan; (f) any Ballot submitted by a person who does not hold a Claim or Interest in the Class in which it voted.

Whenever two or more Ballots are submitted by the Holder of the same Claim prior to the voting deadline, the last Ballot received prior to the voting deadline shall be deemed to reflect the voter's intent and thus supersede prior Ballots.

**D.     Deadline for Objection to Confirmation of the Plan**

The Bankruptcy Court has set _____, 2023 as the last date to file and serve an objection to the confirmation of the Plan.

**E.     Confirmation Hearing**

The Debtor shall submit an application to the Court requesting that the Court enter an Order fixing a date and time for a hearing to consider the confirmation of the Plan (the "Confirmation Hearing"). Once the Court enters an Order for the Confirmation Hearing, the Debtor shall provide notice of said hearing. The Confirmation Hearing may be adjourned from time-to-time without further notice other than an announcement made by the Court. In that event, the adjournment of the Confirmation Hearing shall not serve to extend the last date to file an objection to the Plan or to vote to accept or reject the Plan.

**F.     Exhibits to this Disclosure Statement**

Annexed to this Disclosure Statement are the following Exhibits:

A.     The Debtor's Chapter 11 Plan;
B.     The Loan Term Sheet; and
C.     The Debtor's Balance Sheet.

## FRAMEWORK OF THE PLAN AND EXPECTED RETURN TO HOLDERS OF ALLOWED CLAIMS AND INTERESTS

The following provides a general framework and overview of the Debtor's proposed Plan. The Disclosure Statement contains a detailed description of the Plan.

**A.     Primary Issues in this Chapter 11 Case**

The Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code on May 24, 2023. The Debtor was designated as a single asset real estate debtor as that term is understood under the Bankruptcy Code. The Debtor filed for relief primarily due to the refusal of NPSFT LLC and NPSFT1 LLC (collectively, "NPSFT") to provide a payoff statement in accordance with the note and mortgage which mortgage is a lien against the Debtor's real property commonly known as 23-33 31 Street, Astoria, New York ("Astoria Real Property").

NPSFT filed a proof of claim with this Court (Claim No. 2-1) in which it set forth that it was owed $3,307,902.09 as of July 13, 2023, plus all post interest and fees and costs due and owing in connection therewith.

**B.      Estimated Recovery by Claimants**

Recoveries projected in the Plan shall be from the Debtor's re-financing of the Astoria Real Property and the sale of the real property located at 3-29 150th Street, Whitestone, New York ("Whitestone Property"). The amount generated by the proposed re-financing of the Astoria Real Property shall be used to satisfy the claim of the Secured Creditor; the payment of any outstanding statutory fees due and owing the United States Trustee; the payment of allowed costs of administration of the case (the "Administrative Claims") and a distribution to the holder of Allowed Claims.

The Debtor believes that the recoveries provided for in the proposed Plan exceed any recovery that would otherwise be available if NPSFT were to foreclose on its interest in the Astoria Real Property.  Similarly, the Debtor believes that if this chapter 11 case was converted to one under chapter 7 of the Bankruptcy Code, the holders of the Allowed Claims would receive less than the amounts anticipated in the Debtor's Plan due to the additional administrative expenses that would necessarily be incurred in such liquidation.

**C.      Estimated Recovery by Holder of Ownership Interests**

In the event that the Debtor's proposed re-financing is completed, the current ownership interests in the Debtor shall continue upon confirmation.  In the event that the Debtor's Real Property is liquidated, the ownership interests in the Debtor shall be extinguished upon the sale.

## BACKGROUND INFORMATION OF DEBTOR

**A.      Description of Debtor's Business, Background Facts and Events Leading to the Debtor's Chapter 11 Filing**

The Debtor is a New York limited liability company formed in 2015.  The Debtor's business is the ownership and management of the Astoria Real Property.  In or about July 2015, the Debtor purchased the Astoria Real Property and Whitestone Property from Helen Skarla with the intention of rehabilitating and/or developing the Astoria Property.

Thereafter, efforts to determine the amount due and owing to NPSFT was commenced by the Debtor and was unsuccessful as NPSFT refused to provide a payoff letter and relied on a technicality under the New York Real Property Law and Procedures Act as the transfer of the Astoria Real Property and the Whitestone Real Property by Helen Skarla was subject to the existing mortgage.  That mortgage was ultimately purchased by NPSFT from the Trustee of the bankruptcy case of Eldridge Properties, Inc.

The details of the dispute between the Debtor and NPSFT is set forth in detail in the Debtor's motion to fix the amount of the claim of NPSFT, which is presently before the Court with a conference scheduled on October 24, 2023.

<u>Debtor's Retention of Estate Professionals</u>

At the time of the filing for relief, the Debtor was represented by Weinberg, Gross & Pergament LLP. Weinberg, Gross & Pergament LLP received a pre-petition retainer in the amount of $15, 185.00. This amount was paid by a third party. By Order dated July 26, 2023, the Court authorized the Debtor to retain Weinberg, Gross & Pergament LLP as its counsel.

**B.      Significant Events in the Chapter 11 Case**

The Debtor sought and obtained an Order of the Bankruptcy Court setting a "bar date" which set August 11, 2023, as the last date by which a creditor could file a timely proof of claim. The Order further established November 20, 2023, as the last date by which a governmental unit could file a timely proof of claim.

The Debtor filed a motion with this Cour to fix the amount of the secured claim of NPSFT. The Court entered a Scheduling Order and the parties are engaged in discovery.

In addition, the Debtor has served non-party deposition notices and is trying to gather all of the information and documents necessary for the Evidentiary Hearing to eventually be conducted by this Court on the Debtor's motion.

A determination of the amount due and owing to NPSFT will be the last item that has to be achieved before the Court may confirm the Debtor's plan of reorganization, although the Debtor, once that amount is determined, will be in a position to expeditiously confirm the plan of reorganization.

## PROPOSED TREATMENT OF CLAIMS

**A.      Description and Treatment of Unclassified Claims**

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the following Claims are designated as unclassified claims under the Plan.

<u>Administrative Expense Claims</u>

The terms Administrative Expense Claims and Administrative Claims are defined in section 1.1 of the Plan and generally include any fees or charges assessed against the Debtor's bankruptcy estate pursuant to Section 1930 of title 28 of the United States Code. It provides that any costs or expenses of administration of the chapter 11 case allowed under Sections 503(b) or 507(a)(2) of the Bankruptcy Code including, but not limited to: (a) the actual, necessary costs and expenses incurred after the Filing Date of preserving the Estate and operating the business or managing Property of the Debtor including wages, salaries, or commissions for services rendered

after the Filing Date; (b) allowed Professional Fees of the Debtor's attorneys; (c) United States Trustee Fees; and (d) all other Allowed Claims that are entitled to be treated as Administrative Expenses pursuant to a Final Order of the Bankruptcy Court are considered Administrative Expense Claims.

Except as otherwise agreed by individual holders of Administrative Expense Claims, Entities due Administrative Expense Claims which are Allowed Claims shall be entitled to receive cash equal to the unpaid portion of their Allowed Administrative Expense Claims on or as soon thereafter as practicable (not to exceed ten (10) days) after the Effective Date of the Plan, provided that (a) such Administrative Expense Claims are not Disputed Claims; (b) Administrative Expense Claims (excluding Tort Claims, if any) that represent liabilities for goods sold and delivered or non-Professional Fee Services rendered to the Debtor in the ordinary course of business between the Filing Date and the Confirmation Date shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, or as otherwise agreed by and between the Debtor and the holder of such Administrative Expense Claim[s] and (c) Professional Fees through and including the Confirmation Date shall be paid within ten (10) days following the date of issuance of a Final Order[s] of the Bankruptcy Court approving such Fees, or as otherwise agreed by and between the Debtor and the holder of such Allowed Claim for Professional Fees.

It is anticipated that Administration Expenses shall include any amounts that are due and owing pursuant to statute to the United States Trustee; the Debtor's counsel, Weinberg, Gross & Pergament LLP, which anticipates fees due in the amount of $50,000.00 and expenses in the approximate amount of $2,500.00.  All professionals retained by the Debtor shall file an appropriate application, on notice, in which it will seek an entry of an Order of the Court awarding compensation consistent with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules for the Eastern District of New York.

As set forth in section 2.3 of the Plan, following the entry of an Order of the Court confirming the Debtor's Plan, or any other plan in this chapter 11 case, any requirement that any professional comply with the requirements under the Bankruptcy Code, including, but not limited to the requirements set forth in Sections 327 through 331 of the Bankruptcy Code to be retained, or to seek compensation for services rendered or reimbursement of expenses incurred, shall terminate and the Debtor may employ and pay attorneys or other professionals in the ordinary course.

As set forth in section 2.5 of the Plan, the Debtor shall pay all the amounts that may be due and owing the United States Trustee for its fees and shall continue to pay such fees as they become due as required by law, until such time as the case is closed by entry of a Final Decree, dismissed, or converted to another chapter under the Bankruptcy Code.  Any fees due and owing to the United States Trustee pursuant to statute shall be paid on or before the Effective Date, or as soon as practicable, not to exceed five (5) business days.

<u>Allowed Priority Tax Claims</u>

Allowed Priority Tax Claims are defined as Section 1.7 of the Plan to include any Allowed Claim of a Governmental Unit, for taxes entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

Under section 2.6 of the Plan, except to the extent that a particular Priority Tax Claimant agrees to alternate treatment in writing, on, or as soon as reasonably practicable after, the latest of (i) the Effective Date; (ii) the dates that such claim becomes an Allowed Priority Tax Claim; or (iii) the date that such Allowed Priority Tax Claim becomes payable pursuant to any agreement between the Debtor and each Holder of an Allowed Priority Tax Claim; and each Holder of such Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, release and discharge of such Allowed Priority Tax Claim, (x) cash equal to the amount of such Allowed Priority Tax Claim on the Effective Date of the Plan; or (y) such other treatment as to which the Allowed Priority Tax Claim Holder and the Debtor shall have agreed in writing.

**Description and Treatment of Classified Claims**

The treatment of Claims classified by section 3 of the Plan is generally discussed below. You should refer to the Plan for the operative language governing of the treatment of your claim.

<u>Class 1 – Secured Claim of NPSFT LLC</u>

Class 1 consists of the Secured Claim of NPSFT LLC under its first mortgage on the Astoria Real Property. NPSFT is secured by an interest in the Debtor's Astoria Real Property and the Whitestone Real Property, which is owned by Shanghai Enterprises LLC, an affiliate of the Debtor.

According to the claim filed in this chapter 11 case, NPSFT is owed the amount of $3,307,902.09 as of the date of the filing of its proof of claim (Claim No. 2-1) filed on July 13, 2023. The Debtor has disputed that claim and has filed a motion to fix the amount of the claim.

Class 1 is impaired under the Plan.

<u>Class 2 – Secured Claim of the City of New York</u>

The City of New York has filed a proof of claim in the sum of $43,844.90 for real estate taxes (subject to continued accruals) which must be satisfied in its entirety upon the sale or refinance of the Astoria Real Property. This amount shall be satisfied at the closing of the refinance or the sale of the Astoria Real Property as the case may be.

Class 2 is not impaired under the Plan.

<u>Class 3 – Allowed General Unsecured Claims</u>

Class 3 consists of the Allowed General Unsecured Claims of the Debtor.  A creditor may hold an allowed general unsecured claim by virtue of the Debtor having scheduled the claim in its bankruptcy petition and schedules as a claim that is not disputed, unliquidated or contingent.  In such instance the claim shall be deemed allowed at the amount scheduled.  In the event that a general unsecured creditor filed a timely proof of claim, and that claim was not objected to by the Debtor, that claim shall also be deemed an allowed general unsecured claim.  Finally, if a creditor disagreed with the amount of the claim as scheduled by the Debtor, that creditor could also have an allowed claim by the filing of a timely proof of claim which claim was not objected to by the Debtor.

The Debtor believes that the following creditors as holding general unsecured claims as against the Debtor:

Consolidated Edison Company of New York Inc. ("ConEdison") - $42,979.23. Accordingly, ConEdison shall have an allowed general unsecured claim in the amount of $42,979.23.

Accordingly, the Debtor estimates that the Allowed General Unsecured Claims total $42,979.23.  The Allowed General Unsecured Claims shall be paid in full in Cash within ten (10) business days from the Effective Date.

Class 3 is impaired and entitled to vote.

<u>Class 4 – Ownership Interest in the Debtor</u>

Class 4 consists of the Ownership Interest of the Debtor.  As the Plan proposes to pay the Allowed Claims in full, the Ownership Interest in the Debtor shall remain.  However, in the event that the Debtor fails to remit the payments as provided for herein, and the Astoria Real Property is sold, the Debtor shall have liquidated all or substantially all of its assets and the Debtor will no longer exist.  In that instance, the Debtor's Ownership Interest would be cancelled.

Class 4 is impaired under the Plan but shall not be entitled to vote to accept or reject the Plan.

## **THE EXIT FACILITY**

The Debtor has obtained a Term Sheet from Quontic Bank where it has agreed to provide the Debtor with financing up to $2,500,000.00.  The terms of that Term Sheet are set forth in Exhibit B herein.

The Debtor's ability to close on that financing is not difficult as there is, as conceded by NPSFT, substantial value to the Astoria Real Property, which estimated by NPSFT to be $6,000,000.00 and as the Debtor's affiliate is selling the Whitestone Real Property for

$1,500,000.00 and the maximum amount owed to NPSFT is $3,300,00.00, there is no issue as to the Debtor being able to fully satisfy the amount owed to NPSFT when determined by the Court.

The Effective Date of the Plan is expressly conditioned upon the closing on the Exit Facility having occurred and there being sufficient funds allocated from the Exit Facility to fully fund the plan.

**Exit Facility**

On the Effective Date, the Reorganized Debtor shall be authorized to enter into and perform and execute and deliver the Exit Facility Documents to which such Reorganized Debtor is contemplated to be a party on the Effective Date. The Reorganized Debtor shall be authorized to borrow under such Exit Facility, if applicable, and use the proceeds of such borrowings on the Effective Date for any use not prohibited thereunder, including to fund distributions under and in accordance with the Plan, and ongoing business operations, general corporate purposes and working capital needs. Without limiting the forgoing, the Reorganized Debtor shall pay, as and when due, all fees, expenses, losses, damages, indemnities and other amounts, including and applicable refinancing premiums and applicable exit fees, related to the Exit Facility Documents relating to such Exit Facility.

Confirmation of the Plan shall be deemed (i) approval of the Exit Facility and all transactions contemplated hereby and thereby, and all actions to be taken, undertakings to be made, and indebtedness and other obligations to be incurred by the Reorganized Debtor in connection therewith, including the payment of all fees, expenses, losses, damages, indemnities, and other amounts provided for by the Exit Facility Documents, and (ii) authorization for the Reorganized Debtor to enter into, deliver and perform under the Exit Facility Documents. The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other avoidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

<u>**PROPOSED SALE OF THE DEBTOR'S REAL PROPERTY**</u>

In the event of the sale of the Astoria Real Property, the Debtor shall have no continued interest in the Real Property.

<u>**ARTICLE VII**</u>

<u>**Effect of Confirmation**</u>

7.1    Except for (i) payment obligations imposed by this Plan; (ii) debts of a kind specified in section 141(d)(6)(A) of the Bankruptcy Code if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c); or (iii) debts of a kind specified in section 1141(d)(6)(B) of the Bankruptcy Code, Confirmation of this Plan shall in accordance with Section

1141 of the Bankruptcy Code be deemed to have discharged and released the Debtor and the Debtor's Estate and the Reorganized Debtor from any Claim that arose or that may be deemed to have arisen at any time at or before the Confirmation Date, whether or not:

        a.      A proof of the Claim is filed or deemed to be filed under sections 501 and/or 1111(a) of the Bankruptcy Code;

        b.      such Claim is allowed under section 502 of the Bankruptcy Code; or

        c.      the holder of any Claim has accepted the Plan.

        7.2    Upon and following the Effective Date, all Creditors, Claimants and other Persons or Entities shall be enjoined and prevented from taking any action of any kind or nature, including instituting or continuing any judicial, administrative, action or proceeding, against the Reorganized Debtor to recover or collect on any pre-Confirmation Claims against the Reorganized Debtor, or for any reason, under any theory of law, fact, or equity, other than and/or apart from receiving the treatment provided for the Claim held by such Creditor, Claimant, Person or Entity under the provisions of the Plan, until and unless there is a Default, in which event the provisions of Article IX of this Plan shall govern and control.

        7.3    In accordance with section 1141 of the Bankruptcy Code, Confirmation of the Plan (regardless of whether the Confirmation Order becomes a Final Order of the Bankruptcy Court) shall automatically re-vest the Reorganized Debtor with all of assets of the Debtor's estate, free and clear of all Liens, except for the Debtor's obligations to NPSFT and the payments required to be made pursuant to this Plan Holders of Allowed Claims; and no further Order thereafter shall be required from the Bankruptcy Court nor shall any further notice be provided to Creditors, Claimants, Persons or other Entities having or claiming to have any Claim against the Debtor, the Debtor's Estate, and/or the Reorganized Debtor, with respect to any actions which the Debtor sees fit to take relative to such assets, in the Debtor's sole and unfettered discretion except as otherwise provided for in the Plan.

        7.4    The distributions provided for under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Interests of any nature whatsoever, against the Debtor and the Debtor's estate, except as otherwise provided for in the Plan and on the Effective Date, all Claims against the Debtor, the Debtor's Estate and the Reorganized Debtor, shall be deemed satisfied, discharged, and released in full in consideration of the distributions made or to be made pursuant to the Plan; and all Claimants shall be absolutely barred and precluded from asserting, any other, further, or alternative Claim based on act or omission, transaction, or other activity of any kind or nature against the Debtor, the Reorganized Debtor and/or their respective assets that occurred on or prior to the Filing Date, the Confirmation Date and/or the Effective Date of the Plan, other than as expressly set forth in the Plan.

        7.5    Each and every special right and power granted in and under the Bankruptcy Code to debtors and debtors in possession, expressly, including, but not limited to the right and power to object to Claims, pursuant to Section 502 of the Bankruptcy Code; the right to seek and collect monies due and owing to the Debtor under Section 542 of the Bankruptcy Code, and other

applicable provisions of the Bankruptcy Code and other applicable laws, rules and regulations, the right to seek to equitably subordinate or void Claims and/or alleged security interests under section 510 of the Bankruptcy Code; and the rights and powers provided for under Section 544, 545, 546, 547, 548, 549 and/or 550 of the Bankruptcy Code to pursue and prosecute actions to avoid and recover preferences or fraudulent conveyances, avoid the fixing of a statutory lien on property, pursue claims relating to post-Filing Date transactions as provided for under the Bankruptcy Code are hereby preserved for the benefit of the Reorganized Debtor.  Prosecution and settlement of such Claims shall be the exclusive right and responsibility of the Reorganized Debtor, to be distributed as set forth herein, except that Creditors and Claimants herein may, on notice to the Reorganized Debtor, object to other Creditor's Claims within the time set forth herein for Objections to Claims (the Debtor's right to be heard at such hearing is expressly reserved) and Creditors may apply to the Bankruptcy Court, on notice to the Debtor, for authorization to pursue the rights and powers reserved to debtors under Sections 544, 545, 546, 547, 548, 549 and/or 550 of the Bankruptcy Code, which applications shall be determined by the Bankruptcy Court in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules as well as the Local Rules of the Bankruptcy Court and any applicable Order that may have been entered by the Bankruptcy Court.

Discharge.  Upon Confirmation of the Plan, the Debtor shall be discharged from any debt that arose prior to the Confirmation of the Plan, to the extent provided for in Section 1141(d)(1)(A) of the Bankruptcy Code.  However, the Debtor shall not be discharged of any debt (i) imposed by the Plan; (ii) of a kind specified in Section 1141(d)(6)(A) of the Bankruptcy Code provided that a timely complaint was filed in accordance with Rule 4007(c) of the Bankruptcy Rules; or (iii) a kind specified in Section 1141(d)(6)(B) of the Bankruptcy Code.  After the entry of an Order of the Bankruptcy Court confirming the Plan, claims against the Debtor shall be limited to the debts described herein.

No Discharge In the Event of Liquidation.  In the event the Payment (as may be applicable) is not made to NPSFT, the Debtor shall proceed with the sale of the Astoria Real Property.  In that event, in accordance with section 1141(d)(3) of the Bankruptcy Code, the Debtor shall not receive a discharge and Section 7.1 and Section 7.4 of this Plan shall not apply and shall have no effect.

## **Releases**

7.7    Notwithstanding the relief provided for herein, all injunctions, releases, and exculpations are **ONLY** binding on those parties who consensually granted such relief on all potential causes of action under the Plan.  The injunction and release provisions under this Plan are not intended to enjoin any parties other than the ones who have been granted said relief, to commence any cause of action arising from matters that are unrelated to the ones described under the Plan.

## **Exculpation and Limitation of Liability**

For purposes of the Plan, "Exculpated Parties" means: Debtor with respect to the foregoing persons/entities set forth herein, each of their respective officers, directors, employees, representatives, advisors, attorneys, notaries (pursuant to the laws of the United States and any

other jurisdictions), auditors, agents and professionals, in each case acting in such capacity on or any time after the Petition Date, and any person claiming by or through any of them but excluding any other causes of action preserved by the Debtor.

**ON THE EFFECTIVE DATE, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR EQUITY INTEREST, THE DEBTOR, OR ANY OTHER PARTY-IN-INTEREST, OR ANY OF THEIR RELATED PERSONS FOR ANY PREPETITION OR POST-PETITION ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THIS CHAPTER 11 CASE, THE FORMULATION, NEGOTIATION, OR IMPLEMENTATION OF THE DISCLOSURE STATEMENT, THE PLAN, THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN OR THE ADMINISTRATION OF THE PLAN, EXCEPT FOR THE ACTS OR OMISSIONS THAT ARE THE RESULT OF WILLFUL MISCONDUCT, GROSS NEGLIGENCE, FRAUD OR CRIMINAL ACTS: PROVIDED, HOWEVER, THAT (I) THE FOREGOING IS NOT INTENDED TO LIMIT OR OTHERWISE IMPACT ANY DEFENSE OF SOVEREIGN IMMUNITY OR QUALIFIED IMMUNITY THAT MAY BE AVAILABLE UNDER APPLICABLE LAW; (II) EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING HIS, HER, OR ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH THE PLAN; AND (III) THE FOREGOING EXCULPATION SHALL NOT BE DEEMED TO RELEASE, AFFECT, OR LIMIT ANY OF THE RIGHTS AND OBLIGATIONS OF THE EXCULPATED PARTIES FROM, OR EXCULPATE THE EXCULPATED PARTIES WITH RESPECT TO, ANY OF THE EXCULPATED PARTIES' OBLIGATIONS OR COVENANTS ARISING PURSUANT TO THE CONFIRMED PLAN OR THE CONFIRMATION ORDER.**

### Executory Contracts

7.8     Any and all executory contracts and unexpired leases of the Debtor which are not expressly rejected and disaffirmed herein prior to the Confirmation Date and are not the subject of pending applications to reject or disaffirm as of the Confirmation Date, shall be deemed to be assumed by the Reorganized Debtor.

### Final Decree

Once the bankruptcy estate has been fully administered as provided for in Bankruptcy Rule 3022, the Debtor, as the Plan Proponent, or such other party as the Court may designate in the Plan Confirmation Order, shall file an application with the Bankruptcy Court seeking the entry of a Final Decree (the "Final Decree") which shall close the bankruptcy case.

The bankruptcy case may be considered to be fully administered at any time after the Plan has been confirmed by a Final Order, an there has been "substantial consummation" of the Plan, which is defined under Section 1101 of the Bankruptcy Code to mean – (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the

debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; (C) commencement of distribution under the Plan.

### DESCRIPTION OF CERTAIN OTHER SIGNIFICANT PLAN PROVISIONS

**A.    Default under the Plan**

Pursuant to section 8.1 of the Plan, the following shall constitute an Event of Default under the Plan:

If the Reorganized Debtor fails to remit payments as provided for under the Plan, except if (i) such payment or payments is or may be postponed pursuant to the terms and conditions provided for under the Plan; or (ii) the Reorganized Debtor sent the payment or distribution as provided for in the Plan, however, the said payment or distribution was not delivered or received by the Claimant, Creditor, Person or Entity, for any reason(s) outside of the Reorganized Debtor's control, including without limitation, as a result of the failure by said Claimant, Creditor, Person or Entity to comply with the provisions of this Plan.  In accordance with Section 5.11 herein, such Claimants may be deemed to have irrevocably forfeited any and all further rights to payments or distribution under the Plan and/or any other or further rights against the Reorganized Debtor.

8.2    **Cure of Default**.  Except as otherwise set forth in the Plan, in the event a Creditor, Claimant, Person or Entity claims a default by the Reorganized Debtor under the terms of the Plan, such Creditor, Claimant, Person or Entity shall refrain from any action in respect of such claimed default until it first provides written notice of such default to the Reorganized Debtor and its attorneys herein, in the manner conforming with Section 11.5 hereof.  Thereafter, the Reorganized Debtor shall have forty-five (45) days from its receipt of such notice to cure alleged default or to initiate a proceeding before the appropriate forum in the event of any dispute or controversy as to whether any default actually occurred, and during said forty-five (45) days, or to and until twenty (20) days following the date that a Final Order is issued which resolves any controversy or dispute as to whether a default actually occurred, whichever is later, no Claimant, Creditor, Person or Entity shall take any action to terminate this Plan or otherwise against the Reorganized Debtor.  If the alleged default is cured by the Reorganized Debtor within the time periods provided for herein, the complaining Claimant, Creditor, Person or Entity shall fully accept such cure as if there had been no claimed default and shall not present or argue any other or further claims against the Reorganized Debtor in respect to the claimed default.  In the event that the default is not timely cured, the rights of the complaining Claimant, Creditor, Person or Entity as against the Reorganized Debtor shall be limited to initiating a proper proceeding against the Reorganized Debtor in the appropriate forum to recover the remaining distribution owed pursuant to the Plan to such complaining Claimant, Creditor, Person or Entity, unless there is a subsequent bankruptcy filing or a conversion of the case herein to a chapter 7 bankruptcy case, in which event the entire amount Allowed herein less any distribution actually received thereon shall be entitled to be claimed by the Claimant, Creditor, Person or Entity in the new or converted bankruptcy case.

**B.      Retention of Jurisdiction by the Bankruptcy Court**

Notwithstanding the entry of the Confirmation Order or the Effective Date having occurred, the Plan provides the Bankruptcy Court shall retain jurisdiction over this bankruptcy case to the full extent permitted by applicable law as to:

(a)      Allowance, disallowance, determination, liquidation, classification, estimation or establishment of the priority or secured or unsecured status of any Claim or Interest not otherwise allowed under the Plan, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b)      hear and determine all applications for compensation and reimbursement of expenses of professionals for services through and including Confirmation under the Plan or under Sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(c)      hear and determine all matters with respect to the assumption or rejection of any Executory Contract (including expired leases) to which the Debtor may be a party or with respect to which the Debtor may be liable, including, if necessary, the nature of any amount requiring cure of the liquidation or allowance of any claims arising therefrom;

(d)      hear and determine any and all adversary proceedings, motions, applications and contested matters arising out of, under, or related to the bankruptcy case;

(e)      enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(f)      hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments in connection with the Plan;

(g)      consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or reinforcement of the Plan or the Confirmation Order;

(i)      enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(j)      hear and determine any matters arising in connection with or relating to the Plan, this Disclosure Statement, the Confirmation Order or any contract, instrument, release or other

agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(k)     enforce all Orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the bankruptcy case;

(l)     except as otherwise limited herein, recover all estate assets, wherever located;

(m)     hear and determine all avoidance actions;

(n)     hear and determine matters concerning state, local and federal taxes in accordance with the Bankruptcy Code;

(o)     modify the Plan upon the request of the Debtor and as provided for by applicable law;

(p)     hear and determine such other matters as may be provided for in the Confirmation Order or as may be authorized by applicable law;

(q)     enter a Final Decree closing the bankruptcy case.

## C.    Unclaimed Distributions

Under the Plan, unclaimed and undeliverable Distributions shall include: (i) checks which have been returned as undeliverable without a proper forwarding address; (ii) checks which have been issued to the holder of an Allowed Claim or Allowed Ownership Interest in accordance with the Plan but which have not been presented for payment within one-hundred-eighty (180) days after the date of such checks, and (iii) checks which were not mailed or delivered by the Debtor because of the absence of a complete or correct mailing address. If any Distribution made on account of an Allowed Claim or Allowed Ownership Interest is returned to the Debtor as undeliverable or cannot be delivered for the reasons set forth above, no further Distributions shall made to such Creditor's or Interest Holder's unless and until the Debtor is notified in writing of such Creditor's or Interest Holder's then current address. Subject to the next paragraph , undeliverable Distributions shall remain in the possession of the Debtor until such time as such Distribution becomes deliverable. Undeliverable Distributions shall not be entitled to any interest or other accruals of any kind. Nothing in the Plan shall require the Debtor to make more than a reasonable attempt to locate any holder of an Allowed Claim or Allowed Interest.

If any Distribution on account of any Allowed Claim or Allowed Interest remains undeliverable or unclaimed for a period of one-hundred-eighty-days after the date of the check (the "Claiming Period"), the entire unpaid Allowed Claim or Allowed Interest upon which such Distribution was issued shall, on the first Business Day after expiration of the Claiming Period, be deemed expunged and reduced to zero dollars. The proceeds of all unclaimed and undeliverable Distributions shall, after the expiration of the Claiming Period, be distributed *pro rata* to Creditors that have not been paid in full as to their Claims, in the order of priority.

**D.      Notices**

Section 12.5 of the Plan expressly provides that all notices required to be made in or under the Plan shall be made in writing and shall be mailed by registered or certified mail, return receipt requested, and via electronic mail, as set forth below:

(i)      If to the Debtor or the Reorganized Debtor, to A & T Assets LLC, 21-16 31st Avenue, Astoria, New York  11106, or to such other address as may be designated by the Debtor in a notice which is sent to all Entities which at the time have Allowed Claims which have not yet fully received the distributions to which they are entitled under the Plan, and a copy of any notice to the Debtor or the Reorganized Debtor shall also be sent as provided for herein, to the Debtor's counsel, Weinberg, Gross & Pergament LLP, 400 Garden City Plaza, Suite 309, Garden City, New York 11530 to the attention of Marc A. Pergament, Esq.

(ii)      If to Creditors, Claimants, or other Persons or Entities, to the address which is currently on file for said Persons with the Bankruptcy Court, or as otherwise designated in writing by such Persons to the Debtor in the manner set forth above.

**E.      Recoveries under Chapter 5 of the Bankruptcy Code**

Under the Bankruptcy Code, the Debtor is empowered with certain rights to commence litigation to recover fraudulent conveyances and/or preferences.  Fraudulently conveyed funds may be recovered pursuant to Section 544(b) of the Bankruptcy Code, by the Debtor, under both the Bankruptcy Code and New York Debtor & Creditor Law.  Amounts fraudulently conveyed by the Debtor in the two (2) years immediately prior to the Petition Date.  Amounts fraudulently conveyed by the Debtor in the four (4) years immediately prior to the Petition Date, pursuant to New York Debtor & Creditor Law may also be recovered by the Debtor.  To be recoverable, the Debtor had to make the payments at a time when it was insolvent, or the transfer rendered the Debtor insolvent.  In addition, to recover the payments, the Debtor must not have received fair or reasonably equivalent value for the transfers.

Payments made by the Debtor in the ninety (90) days immediately prior to the Petition Date, on account of antecedent debt, may be considered preference payments pursuant to Section 547 of the Bankruptcy Code.  Payments made by the Debtor in the one (1) year immediately prior to the Petition Date, made to "insiders" of the Debtor, as that term is defined under the Bankruptcy Code, may be recoverable.

A preference payment would have to enable the creditor to receive more than it would have received if the case were one under chapter 7 of the Bankruptcy Code.  Recipients of an alleged preference have certain defenses available to them to avoid having to return funds to the Debtor.

The Debtor has performed an analysis of its books and records to determine whether it has the right to prosecute any action to recover either alleged fraudulent conveyances or preference payments.  The following is an analysis of those payments identified by the Debtor as payments that may be subject to recovery.  The Debtor has not identified funds paid by the Debtor to insiders

of the Debtor as that term is defined under the Bankruptcy Code during the one (1) year immediately prior to the Filing Date.

## F.      Section 1146 of the Bankruptcy Code

Pursuant to, and to the fullest extent permitted by, Section 1146 of the Bankruptcy Code, any transfers of property under the Plan, including the recording of any amendments to such transfers, or any new mortgages or liens placed on the property in connection with such transfers, shall not be subject to any stamp tax or similar tax, and upon entry of the Confirmation Order, the appropriate state or local government officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

## G.      Miscellaneous Provisions

The Plan contains several miscellaneous provisions not separately discussed in the Disclosure Statement, including provisions for modification of the Plan pursuant to the Bankruptcy Code.  Parties are directed to review the Plan for such provisions.

## <u>FEASIBILITY AND RISK FACTORS</u>

## A.      General Feasibility Analysis

Pursuant to Section 1129(a)(11) of the Bankruptcy Code, one of the requirements for confirmation of a plan of reorganization is a determination by the Bankruptcy Court that the plan is feasible – that is, that confirmation of the plan is not likely to be followed by liquidation or the need for further reorganization unless the same is specifically provided for in the plan.

As the Debtor's Plan proposes either (i) the exit financing which enables the Debtor to satisfy the claims of NPSFT and make a distribution to the other Allowed Claims, or (ii) the sale of the Debtor's assets, the Debtor's Plan is feasible.  The Debtor proposes to borrow sufficient funds to both satisfy NPSFT and to pay the other Allowed Claims as provided for in the Plan.

## B.      Risk Factors

As with any plan of reorganization or other financial transaction, there are certain risk factors which must be considered.  It should be noted that all risk factors cannot be anticipated that some events may develop in ways that were not foreseen and that many or all the assumptions have been used in connection with the Disclosure Statement and the Plan will not be realized exactly as assumed.  Some or all such variations may be material.  While every effort has been made to be reasonable in this regard, there can be no assurance that subsequent events will bear out the analysis set forth herein.  Under the Plan, some of the principal risks that Claimants should be aware of, from the Debtor's perspective, as follows:

(i)      The Plan is subject to the approval of the Holders of the Claims includable in Class 3 which is the only Class entitled to vote on the Plan.  No assurance can be given that the Plan will be accepted by this Class or confirmed by the Bankruptcy Court.  Failure to the Holders of Claims in Class 3 to vote or the acceptance of the Plan or a decision by the Bankruptcy Court to deny Confirmation of the Plan could lead to delay and the incurrence of additional expenses.

(ii)      The actual amount of all Allowed Claims in any Class and the amounts estimated for Administration Expenses may differ significantly from any estimates provided herein.  Accordingly, the amount and timing of the Distributions that will ultimately be received by any particular Holder of an Allowed Claim may be materially and adversely affected should the estimates by exceeded as to any Class or Administration Expense.

(iii)      The tax consequences of the Plan set forth below may vary significantly from the anticipated consequences and could result in less funds being available for Distribution to the Holders of Allowed Claims.

The foregoing risks are inherent in any chapter 11 plan.

## ALTERNATIVES TO THE PLAN

The Bankruptcy Code requires as a condition to confirmation that Creditors receive, on account of their claims, at least as much as they would receive if the case were a case under chapter 7 of the Bankruptcy Code.  Because the Plan provides for payment in full to the allowed general unsecured creditors provided that NPSFT is paid as provided for in the Plan, or, in the event of a sale, a distribution to the allowed general unsecured creditors, creditors must consider whether a liquidation of the Debtor's assets may result in a greater distribution.  Thus, from the Debtor's perspective, the proposed Plan provides for a greater distribution to the creditors than a conversion to chapter 7 under the Bankruptcy Code and forced liquidation.

## REQUIREMENTS FOR CONFIRMATION

In order to confirm the Plan, Section 1129 of the Bankruptcy Code requires that the Bankruptcy Court make a series of findings concerning the Plan and the Debtor, including:

that the Plan has classified Claims and Interests in a permissible manner;

that the Plan complies with the applicable provisions of the Bankruptcy Code;

that the Debtor has complied with applicable provisions of the Bankruptcy Code;

that the Debtor has proposed the Plan in good faith and not by any means forbidden by law;

that the disclosures required by Section 1125 of the Bankruptcy Code have been met;

that the Plan has been accepted by the requisite votes of creditors (except to the extent that Confirmation is available under Section 1129(b) of the Bankruptcy Code);

that the Plan is feasible and that Confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor;

that the Plan is in the "best interests" of all Holders of Claims or Interests in an Impaired Class by providing such Holders on account of their Claims or Interests property of a value, as of the Effective Date, that is not less than the amount that any such Holder would receive or retain in a chapter 7 liquidation, unless each Holder of a Claim or Interest in such Class accepts the Plan;

that all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court as the hearing on Confirmation, have been paid or the Plan provides for the payment of such fees on the Effective Date; and

that the Plan provides for the continuation after the Effective Date of all retiree benefits, if any, as defined in Section 1114 of the Bankruptcy Code.

## A.    Cram Down

Section 1129(b) of the Bankruptcy Code permits the Bankruptcy Court to confirm a plan notwithstanding the failure to obtain the requisite acceptance of the plan for each Impaired Class of Claims or Interests, if one Impaired Class of Claims accepts the plan.  This procedure is known as "cram down."  The plan may be confirmed over the non-acceptance of the Impaired Class if the other Confirmation requirements set forth in Section 1129(a) (other than paragraph (8) are met, the plan does not unfairly discriminate with respect to such Class and (i) the members of the non-accepting Class receive full payment of their Allowed Claim or Allowed Interests; or (ii) the holders of Claims or Interests in such Class are to receive less than full payment, but no Class junior to the non-accepting Impaired Class receives or retains any property under the Plan.  If the applicable requirements of Section 1129(a) of the Bankruptcy Code, other than paragraph 8 thereof, are met with respect to the plan, the Debtor will request that the Bankruptcy Court confirm the plan under Section 1129(b) of the Bankruptcy Code.

## TAX CONSEQUENCES

**CREDITORS, CLAIMANTS AND HOLDERS OF OWNERSHIP INTERESTS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS.**

The following are the anticipated tax consequences of the Plan:

(1)    Tax consequences to the Debtor of the Plan:  The Debtor shall not be taxed for any discharge of debt under the Plan;

(2)     General tax consequences on creditors as to any discharge, and the general tax consequences of receipt of Plan consideration after Confirmation:  if a Creditor does not receive 100% on account of their Allowed Claim under the Plan, shall have a loss that may be utilized on their tax return if that Creditor or Claimant has not previously utilized the loss.  If the loss was previously utilized, the receipt of any consideration from the Plan may result in reportable income.

OTHER THAN THE ABOVE, THIS DISCLOSURE STATEMENT DOES NOT ADDRESS THE PARTICULAR FEDERAL INCOME TAX CONSEQUENCES THAT MAY BE RELEVANT TO TAXPAYERS UNDER THE FEDERAL INCOME TAX LAWS, NOR DOES IT DISCUSS ANY ASPECT OF FEDERAL, STATE, LOCAL OR FOREIGN TAX LAWS THAT MAY BE APPLICABLE TO PARTICULAR TAXPAYERS.  THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS AND INTERESTS, INCLUDING THE AVAILABILITY OF WORTHLESS DEBT OR WORTHLESS STOCK DEDUCTIONS, IF ANY, MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER.  EACH CREDITOR, CLAIMANT AND HOLDER OF AN OWNERSHIP INTEREST TREATED BY THE PLAN IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, OR FOREIGN TAX CONSEQUENCES OF THE PLAN.

## RECOMMENDATION OF THE DEBTOR

THE DEBTOR BELIEVES THAT THE PLAN WILL ENABLE IT TO SUCCESSFULLY REORGANIZE AND ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR, ITS CHAPTER 11 ESTATE AND ALL CREDITORS AND CLAIMANTS HEREIN.

The Debtor recommends that Claimants, Creditors and Holders of Ownership Interests that are entitled to vote on the Plan, vote to accept the Plan.  The Debtor is the proponent of the Plan and believes that the Plan is the best means to maximize the value of the Debtor's Estate, and to provide the greatest and quickest distribution to Claimants and Creditors on account of their Allowed Claims against the Debtor and Holders of Ownership Interests on account of their Interests in the Debtor.  The Plan, as opposed to dismissal of the case or conversion of the case from one under chapter 11 of the Bankruptcy Code to one under chapter 7 of the Bankruptcy Code shall permit a greater distribution to all creditors.  The proposed treatment of the Claimants, Creditors and Ownership Interests under the Plan proposes a greater recovery than that which is likely to be achieved under other alternatives for the reorganization or liquidation of the Debtor.

## CONCLUSION

The Debtor submits that the Plan complies with all requirements under chapter 11 of the Bankruptcy Code and that the Plan is fair and equitable and provides for a greater, more immediate

and more certain return than would likely be achieved under any other reasonable alternative. Therefore, the Debtor recommends that those entitled to vote on the Plan vote to accept the Plan.

Dated: Astoria, New York
   October 13, 2023

         A & T Assets LLC
         Debtor and Debtor-in-Possession

    By: */s/ Evangelos Gerasimou*
         Evangelos Gerasimou, Manager

Dated: Garden City, New York
   October 13, 2023

         Weinberg, Gross & Pergament LLP
         Attorneys for Debtor and Debtor-in-Possession

    By: */s/ Marc A. Pergament*
         Marc A. Pergament
         400 Garden City Plaza, Suite 309
         Garden City, New York  11530
         (516) 877-2424 ext. 226
         mpergament@wgplaw.com